Scott J. Reit, Thomas A. Groendyke, Fleming, O'Bryan & Fleming, P.A., Fort Lauderdale, Fla., for plaintiff.

Raymond B. Ray, Fort Lauderdale, Fla., for defendant.

### In re SOUTHEAST FOREST PRODUCTS CORPORATION, Debtor.

### George W. McLAUGHLIN, as Trustee, Plaintiff,

v.

### A.C. DUTTON, Defendant.

**Bankruptcy No. 85–0135–BKC–AJC.**
**Adv. No. 88–0477–BKC–AJC–A.**

United States Bankruptcy Court,
S.D. Florida,
Broward County Division.

March 3, 1989.

## FINDINGS OF FACTS AND CONCLUSIONS OF LAW

A. JAY CRISTOL, Bankruptcy Judge.

This cause came on before the court on October 7, 1988, upon the complaint of George W. McLaughlin as Trustee for Southeast Forest Products Corporation for a Complaint to Set Aside Preferential Transfers, pursuant to Title 11 of the United States Code, and the court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the argument of counsel, and being otherwise fully advised in the premises, makes the following Findings of Fact and Conclusions of Law:

1. This adversary action involves transfers made by the Debtor, SOUTHEAST FOREST PRODUCTS CORPORATION (SOUTHEAST) to Defendant, A.C. DUTTON in the form of three separate checks of $3,428.05; $7,000.00 and $11,800.05 for total alleged preferential transfers of $22,228.10.

2. Under § 547(b) of Title 1 of the Bankruptcy Reform Act of 1978 (The Code), a preference is: (i) a transfer, (ii) of an interest of the debtor in property, (iii) to

or for the benefit of the creditor, (iv) for or on account of an antecedent debt, (v) made while the debtor was insolvent, (vi) on or before ninety (90) days before bankruptcy, (vii) that enables the creditor to receive more than it would receive in a Chapter 7 case if the transfer had not been made.

3. The transfer of an interest of the Debtor in property is represented by the checks tendered and cashed by Defendant, A.C. DUTTON.

4. A.C. DUTTON was a trade creditor of SOUTHEAST FOREST PRODUCTS CORPORATION who sent invoices to reflect transactions between the parties. The transfers by SOUTHEAST FOREST PRODUCTS CORPORATION to A.C. DUTTON were to or for the benefit of A.C. DUTTON as they were made directly to the Defendant. The transfers were made on account of antecedent debts which occurred as indicated by the invoice dates, but were not paid until the Defendant received the check and the check cleared the account of the Debtor.

5. SOUTHEAST FOREST PRODUCTS CORPORATION was insolvent at the time of each of the transfers on 7/1/85; 7/25/85 and 8/12/85. The sum of SOUTHEAST FOREST PRODUCTS CORPORATION'S debts as indicated in the Amended Disclosure Statement to All Creditors and Parties of Interest filed in the Chapter 11 Proceeding on April 8, 1986, indicates the total unsecured liabilities as of July 19, 1986 of $1,148,265.51 and as of August the sum of $1,100,127.84. The Trustee is aided by the presumption set forth in § 547(f) that the Debtor is presumed to have been insolvent on or during the ninety (90) days immediately preceding the date of bankruptcy. August 28, 1985, is the date that a petition for relief under Chapter 11 was filed in this Court by SOUTHEAST FOREST PRODUCTS CORPORATION. Therefore, all of the transfers occurred within the ninety (90) day period before the filing of bankruptcy. Rule 301 of the *Fed.R.Evid.* as incorporated by Bankruptcy Rule 9017 provides that a presumption imposes on a party against whom it is directed the burden of going forward with evidence to rebut or

meet the presumption. Defendant offered no testimony to refute the insolvency of the Debtor.

6. Defendant, A.C. DUTTON received one hundred percent payment on its accounts with SOUTHEAST. There is projected to be no greater than a ten percent (10%) transfer to the creditors of the Estate based upon the current deposit and disbursement statements filed with this Court and the outstanding claims against the estate. Thus, it is clear that A.C. DUTTON, as Defendant, would have received less in a Chapter 7 liquidation case than it received by retaining the payments.

7. Defendant did not contest the elements of the Trustee's case under § 547(b), but instead relied upon its affirmative defense that the transfer was non-avoidable pursuant to § 547(c)(2).

8. The parties agreed that Charts No. 1, 2, and 3 attached to Plaintiff's Unilateral Pretrial Stipulation accurately summarized the invoices which were paid by the alleged preferential payments (except Invoice No. 5406 on Chart No. 2 was corrected to reflect an invoice date of 3/13/85 and 134 days until payment); the parties further agreed that the Chart labeled, "Course of Dealings" attached to Plaintiff's Unilateral Pretrial Stipulation accurately summarized their prior business transactions by invoice and payment dates. Defendant's witness, Kenneth L. Miron, testified that the date of delivery of goods occurred on the same day or the day following the invoices sent from Defendant to SOUTHEAST.

9. SOUTHEAST had thirty (30) credit transactions with A.C. DUTTON in 1984 with eleven (11) payments ranging from four (4) to forty-six (46) days after the date of the invoice for the transaction. Most of the payments were made twenty (20) to thirty five (35) days after the invoice date.

10. In 1985 there were fourteen (14) credit transactions which were all paid by the three (3) checks which are alleged to be preferential payments. These payments ranged from eighty three (83) to one hundred fifty (150) days after the date of the invoice for the transaction with only one as

short as eighty three (83) days and most over one hundred days.

11. The Accounts Payable records of SOUTHEAST showed that SOUTHEAST'S payments to its other suppliers were made in the following ranges after date of invoice:

| SUPPLIER | PAYMENT AFTER INVOICE |
|---|---|
| Morel Michaud Lumber Ltd | 17 days through 36 days |
| Dantlzer Lumber | 30 days through 56 days |
| Medford Corporation | 28 days through 39 days |

12. Defendant's only witness, Kenneth L. Miron, testified that the basic wholesale terms in the industry were that payment was due five (5) days after invoicing.

13. Plaintiff's only witness, Linda Carey, assisted in all aspects of SOUTH-EAST'S business during the last few months of the business when the bookkeeper had to be let go due to financial difficulties of the firm. Ms. Carey testified that she had never heard of any special terms by any suppliers which were as long as sixty (60) days after the date of invoice. She testified that her regular practice was to prepare a purchase order to confirm the purchase of any treated lumber pursuant to the instructions of the salesman who had negotiated the purchase and she would then give the purchase order to the salesman who would sign it. The four (4) invoices numbered: 1506, 1507, 1508 and 1509 were all backed up with corresponding purchase orders prepared by Linda Carey. She testified that these purchase orders were signed by Steve Blaine and the terms were two (2%) percent discount if paid within ten (10) days with payment due on the eleventh (11th) day.

14. Mr. Miron testified that it was his practice to review purchase orders received from customers and call the customer if any terms on the purchase order were incorrect. He further testified that he had no recollection of ever calling SOUTH-EAST to correct a purchase order. None of the invoices reflected any terms which contradicted the purchase orders.

15. The Court finds that the payments by SOUTHEAST to A.C. DUTTON were not made in the ordinary course of business of the parties. None of the preferential payments were made as promptly as the slowest payment during the thirty (30) previous transactions. The Court also finds that the preferential payments were not made according to ordinary business terms.

16. The testimony of Kenneth L. Miron that he had agreed to extended terms for payment for lumber purchases in 1985 up to ninety (90) days after the date of invoice does not establish an ordinary course of business of the parties nor does it establish ordinary business terms. In fact, Mr. Miron testified that A.C. DUTTON was unique in the industry in offering extended payment terms throughout the entire year. Unique business terms are not ordinary by their very nature. Furthermore, the billing cycle for other customers of A.C. DUTTON such as Sherwood Lumber Co., was about thirty (30) to forty-five (45) days in May, 1985, and at one point in his testimony, Mr. Miron recalled that the terms with SOUTH-EAST would have also been forty-five (45) days after invoice for lumber purchases in May, 1985. This evidence highlights the lateness of the preferential payments by SOUTHEAST which were made eighty three (83) to one hundred fifty (150) days after date of invoice.

17. Preference exceptions are affirmative defenses. Thus, the Defendant, A.C. DUTTON had the burden of proving an exception to preference avoidance.

18. The applicability of the ordinary course of business exception requires consideration of all of the circumstances of the payments and stated in *In re Craig Oil Co.*, 785 F.2d 1563, 1567 (11th Cir.1986):

"Lateness is particularly relevant in determining whether payments should be protected by the ordinary course of business exception. As several courts have noted, this exception is directed primarily to ordinary trade credit transactions. These typically involve some extension of credit but are meant to be paid in full within a single billing cycle. It was for this reason that Congress originally required payment within forty-five days of incurring the obligation. This period represents a normal trade cycle."

19. Defendant, A.C. DUTTON failed to carry its burden of proof that the payments to Defendant from SOUTHEAST which ranged from eighty-three (83) days to one hundred fifty (150) days after the date of invoice were consistent with either the ordinary course of business between the parties or with ordinary business terms in the industry.

### FINAL JUDGMENT

In conformity with the Findings of Fact and Conclusions of Law of even date, it is

ORDERED,

Judgment will be entered for the Plaintiff against the Defendant in the amount of TWENTY TWO THOUSAND TWO HUNDRED TWENTY EIGHT DOLLARS and TEN CENTS ($22,228.10), plus interest from January 26, 1988, the date of Plaintiff's letter to Defendant, plus costs to be awarded, for which let execution issue.

DONE and ORDERED.